# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEONARD ZISMAN and SUSAN EICHLER,**

                **Plaintiffs,**

**-vs-**                                   **Case No.  6:08-cv-1448-Orl-31DAB**

**DAVID E. LESHNER, KATHRYN BUSCH, LPL FINANCIAL CORPORATION, and GLOBAL PLANNING, INC.,**

                **Defendants.**

_____

# ORDER

This matter comes before the Court on the Motion to Compel Arbitration and Stay Action, and in the Alternative, Motion to Dismiss (Doc. 9), filed by Defendants LPL Financial Corporation ("LPL"), Kathy Busch ("Busch"), and Global Planning, Inc. ("Global Planning"), and the response (Doc. 22) filed by the Plaintiffs, Leonard Zisman ("Zisman") and Susan Eichler ("Eichler").

## I.     Background

Zisman and his sister, Bonnie Zisman Robinson, were the beneficiaries of two trusts established by their mother, Sylvia Zisman. These trusts were the Sylvia Zisman Revocable Living Trust (henceforth, "Trust Number 1") and the Sylvia Zisman Revocable Living Trust Number 2 (henceforth, "Trust Number 2"). Plaintiff Susan Eichler is Zisman's attorney-in-fact.[1] Defendant David E. Leshner ("Leshner") was the trustee of those two trusts and of two others of

---

[1]As all of Eichler's claims in this suit derive from her possession of Zisman's power of attorney, the remainder of this opinion will not refer to her separately from Zisman.

which Zisman was the sole beneficiary.  These latter two trusts were the Leonard Zisman Trust and the Leonard Zisman Texas Avenue Trust (henceforth, the "Texas Avenue Trust").  Both Zisman's sister and mother have passed away, with his sister predeceasing his mother.  After his mother died, a dispute arose as to, *inter alia*, whether Zisman or his sister's estate – of which Leshner was also the personal representative – was entitled to certain life insurance proceeds.  On October 14, 2007, Zisman sued Leshner in state court, seeking Leshner's removal as trustee of the four trusts, an accounting, and a surcharge against Leshner for the attorney's fees and costs incurred by the trusts.

On July 2, 2008, Zisman filed a "Second Amended Petition" (Doc. 2), adding claims against LPL Financial Corporation ("LPL"), Global Planning, Inc. ("Global"), and Kathryn Busch ("Busch").  According to Zisman, Busch owns Global (an investment advisor that services clients for LPL) and briefly served as trustee (prior to Leshner) for Trust Number 1 and Trust Number 2. (Doc. 22 at 3).  Zisman accused LPL, Global, and Busch of negligence and of breaching fiduciary duties for having "failed to properly invest trust assets".[2]  (Doc. 2 at 24-28).  In addition, Zisman accused Busch of conspiring with Leshner to deprive Zisman of certain insurance proceeds to which he was entitled.  (Doc. 2 at 23-24).  On August 20, 2008, the case was removed to this Court on diversity grounds.  LPL, Busch and Global now contend that the claims against them must be submitted to arbitration.

---

[2]The Second Amended Petition provides no specifics as to which assets were improperly invested, when this occurred, or even which trust held the assets.

## II.        Standard

Federal policy favors arbitration over litigation, and requires that arbitration clauses be construed broadly and that all doubts be resolved in favor of arbitration. *Seaboard Coast Line R. R. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir.1982); see *also Nicor Int'l Corp. v. El Paso Corp.*, 292 F.Supp.2d 1357, 1371 (S.D.Fla.2003) (noting strong federal policy in favor of enforcing arbitration agreements). The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides, in relevant part, as follows:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract ... or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA further provides that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause. *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 2448 F.3d 1109, 1114 (11th Cir. 2001).

A federal court must undertake a two-step inquiry when considering a motion to compel arbitration. Its first task is to determine whether the parties agreed to arbitrate the dispute, a determination made by reference to the federal law of arbitrability, applicable to any arbitration agreement within the coverage of the FAA. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). As a matter of federal law,

any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983). If the Court finds that the parties agreed to arbitrate the claims, its second task is to determine "whether legal constraints external to the parties agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp.*, 474 U.S. at 628, 105 S.Ct. at 3355. It is well-established that one may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract. *McBro Planning and Development Co. v. Triangle Elec. Const. Co., Inc.*, 741 F.2d 342, 344 (11th Cir. 1984).

## III.   Analysis

Sylvia Zisman opened two accounts at LPL, one for Trust Number 1 and one for Trust Number 2. Each account agreement[3] provided, in pertinent part, that

> In consideration of opening one or more accounts for you, you agree that **any controversy between you and LPL arising out of or relating to your account**, transactions with or for you, or the construction, performance, or breach of this agreement whether entered into prior, on or subsequent to the date hereof, shall be settled by arbitration in accordance with the rules then obtaining of the National Association of Securities Dealers, Inc. Any arbitration award hereunder shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

LPL, Global Planning and Busch (henceforth, the "Movants") first argue that Zisman's claims against them arise out of or relate to Sylvia Zisman's accounts, or transactions with or for her, and therefore must be arbitrated. (Doc. 9 at 8). However, this argument ignores the fact that

---

[3]Both Sylvia Zisman and Leshner, in his capacity as trustee, eventually signed new account agreements with one of the accounts, but the new agreements contained arbitration clauses that were substantively identical to the ones contained in the original account agreement.

Zisman was not a party to the account agreements at issue.  Without more, Zisman is not bound by the agreement to arbitrate.  However, this does not end the inquiry.

### Compelling arbitration by nonsignatories

Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum, the lack of a written arbitration agreement is not necessarily an impediment to arbitration.  *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 756-57 (11th Cir. 1993).  Certain limited exceptions, such as equitable estoppel, allow nonsignatories to a contract to compel arbitration.  *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).  A second exception exists when, under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.  *Id.* (*citing Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1432 (M.D.Ala. 1997).  A third exception applies when the parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party certain rights of action under the contract.  *Id.*

The Movants contend that the first exception applies, and Zisman is equitably estopped from avoiding arbitration.

### Equitable Estoppel

Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that the contract imposes.  *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) (requiring non-signatory to promissory note that contained arbitration clause, who was not seeking to enforce note, to arbitrate statutory

RESPA claims which derived from her status as a borrower under the note).  When a party relies on the terms of a written agreement in asserting its claims, equitable estoppel prevents the party from seeking to avoid an arbitration clause within the agreement.  *Becker v. Davis*, 491 F.3d 1292, 1300 (11th Cir. 2007).

The Movants contend that Zisman is obligated to arbitrate his claims against them because any rights against them he possesses "must derive, if at all, from the relationship between LPL Financial and the Trust, and that relationship depends on and is governed by the agreements between LPL Financial and the Trust."  (Doc. 9 at 9).  Because Zisman must rely on those arguments to have standing to assert his rights against the Movants, the argument continues, he is estopped from seeking to avoid the arbitration clauses within those agreements.

Zisman argues that equitable estoppel has no application to the instant case.  In support he cites to *Bahena v. American Voyager Indemnity Insurance Co.*, 2008 WL 780748 (M.D.Fla. March 19, 2008), which describes two situations in which a non-signatory to an arbitration agreement may rely on equitable estoppel to compel a signatory to arbitrate.  *See id.*  As Zisman points out, the situation in the instant case does not match either of the situations described in *Bahena*.  However, given that LPL is a signatory to the arbitration agreement at issue in this case, *Bahena* is not applicable here.

Aside from his citation to the *Bahena* case, Zisman offers nothing to refute the Movants' argument that any rights against them that he might possess arise out of (or are a consequence of) the account agreements between the trusts and LPL.[4]  As a result, the Court finds that Zisman is

---

[4]Zisner attempts to argue that the allegations in the Second Amended Petition also relate to losses he suffered in other LPL accounts – accounts not governed by the account agreements relied

bound by them just as the trustee would have been had he chosen to bring these claims against the Movants.

In consideration of the foregoing, it is hereby

**ORDERED** that Motion to Compel Arbitration and Stay Action, and in the Alternative, Motion to Dismiss (Doc. 9) is **GRANTED IN PART**, as follows.  The claims brought by the Plaintiffs against the Movants are hereby **STAYED** and must be arbitrated pursuant to the terms of the arbitration clauses contained in the account agreements attached to the motion.  In all other respects, the motion is **DENIED**..

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 29, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

on by the Movants.  (Doc. 22 at 9).  However, the accounts he refers to in his response do not appear anywhere in the Second Amended Petition, either in its extensive "Background Facts" section or in the particular counts targeting the Movants.  Zisman can hardly seek to avoid arbitration on the basis of claims he never brought.